CHICAGO TITLE & TRUST CO. et al. v. STATE BANK OF AMBIA.

(Circuit Court of Appeals, Seventh Circuit. May 17, 1898.)

No. 475.

STATE BANK—IMPAIRMENT OF CAPITAL—INDIANA BANK ACT.

Under section 13, of the Indiana bank act, as amended March 9, 1895, providing that, when the capital of a state bank becomes impaired, the auditor of state shall levy an assessment upon the shareholders to make good the deficiency, and, if any shareholder fails to pay such assessment, shall cause his stock to be sold to the highest bidder, the proceeds of such sales do not belong to the bank, but must be paid to the shareholder, less expenses of sale.

In Error to the Circuit Court of the United States for the District of Indiana.

Plaintiffs in error alleged in their petition that the defendant in error was a bank of discount and deposit organized under the law of Indiana with a capital stock of $25,000, divided into 250 shares; that plaintiffs in error owned 100 of these shares, for which $100 per share had been paid by one McConnell; that they had owned these shares since the 2d day of January, 1896; that on August 1, 1896, the state auditor directed an assessment of 60 per cent. to make good an impairment of the capital stock of said bank; that on August 1, 1896, the directors of said bank gave to plaintiffs in error notice of said assessment, amounting to the sum of $6,000 on their stock; that they failed to pay said assessment; that on the 10th of November, 1896, the auditor valued

the said shares at $40 per share, and directed that the same be sold at public auction after three weeks' notice; that afterwards said bank gave notice that upon Saturday, the 2d of January, 1897, at 12 o'clock noon, at the front door of its banking house at Ambia, Ind., said shares would be sold, etc.; that said shares were sold pursuant to said notice for the sum of $40 per share, aggregating $4,000 in cash, which money was received by the cashier of said bank; that immediately thereafter plaintiffs in error tendered the said cashier the 100 shares of capital stock so sold and demanded the $4,000, less the expenses of said sale, but that said cashier and defendant in error refused to pay the same, or any part thereof. Defendant in error demurred to the petition outlined above, and intended to make a case within the statute quoted below in the opinion. The demurrer was sustained, and judgment rendered upon the same and for costs against these plaintiffs in error, who now bring the record to this court.

Samuel O. Pickens, for plaintiffs in error.
Daniel Fraser, for defendant in error.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

SHOWALTER, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

We are not referred to any by-law of the defendant in error or to any statute of Indiana which obligates the stockholders of corporations such as this defendant in error to make good any mere impairment of capital other than the following provisions, being part of what is now section 13, as substituted by amendment March 9, 1895, for the original section 13 of the act of February 7, 1873, of the Revised Statutes of Indiana, entitled "An act to authorize and regulate the incorporation of banks of discount and deposit in the state of Indiana":

"Whenever the auditor of state shall have reason to believe that the capital stock of any of said associations is reduced by impairment or otherwise, below the amount required by law or by its articles of association and certificate of increase or decrease of capital, as the case may be, the auditor shall require the deficiency to be made good and the board of directors shall immediately give notice of such requisition to each stockholder and of the amount of assessment which he must pay, by notice made to such stockholder at his place of business or served personally upon him. If any stockholder shall refuse or fail to pay the assessment specified in the notice within sixty (60) days from the date thereof, said directors shall have the right to sell said stock, or any part thereof, to the highest bidder at public or private auction, and with or without notice as the auditor may direct the sale to be made, but such stock shall not be sold for a less sum than valuation put thereon by the auditor and certified by him to the board of directors, and the auditor may revalue such stock, and new offers for sale may be made at any time, and from the proceeds of sale shall first be deducted the costs thereof.

"If any association shall neglect for sixty (60) days after the auditor shall have required such deficiency to be made good to comply with such request, the auditor shall report the fact to the attorney-general, who shall at once institute such legal proceedings as shall be proper to wind up the defaulting association according to law, and in [any ?] violation of law, or default named in this act shall be sufficient cause for the appointment of a receiver for any such association."

The directors are empowered to sell, provided the purchaser will pay as much as the value certified by the auditor; but it is nowhere stated in this statute that the price received by the directors shall go to and become the property of the bank. Presumably, the price,

less the expenses of the sale, would belong to the owner of the stock sold. In such case the bank would lose nothing. The purpose of the statute is apparently to enable the bank to get rid of unwilling stockholders, and go on with its business. The extra obligation of shareholders for debts and liabilities of the corporation in default of assets is fully provided for in other portions of the statute. No obligation of that sort is involved here. The statute does not in terms or by necessary implication create an obligation on stockholders to pay more than the full par value of the shares merely to replenish or replace capital lost in the business of the corporation. Counsel do not question the validity of the amendment as concerns the sale of shares in the manner provided in case the holder does not choose to pay the assessment made by the auditor. Apparently the bank may be wound up if stockholders, or persons willing to become stockholders, by purchase in the manner directed, do not replenish the capital as demanded by the auditor. But, whatever may be the precise meaning and policy of this statute, we do not find in it satisfactory ground for the ruling that these plaintiffs in error, owning the 100 full-paid shares, must forfeit $4,000,—that being the entire value of the shares sold pursuant to the direction of the auditor, —because they did not elect to pay $6,000 additional in order to replenish the capital, and enable the business to continue. The statute does not say that the $4,000—the price received for these shares—should be forfeited by the owners; it does not say that the bank should become owner either of the shares or the money received as the price of the same. The directors had, according to the statute, the power to sell for the price fixed by the auditor, but not the right to withhold that price, less the expenses of the sale, from the owner of the shares. Whether or not, if such were the expressed meaning, the statute would be valid or constitutional, is a question which need not be discussed. The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.